¶ 1. Following an indictment by the grand jury, Randy Gunter pled guilty to cocaine possession in violation of Miss. Code Ann. § 41-29-139, in August 1999. After a pre-sentence investigation, in September 1999, Gunter was sentenced to eight years, suspended, with one year house arrest, followed by five years' supervised probation, plus a fine and costs. Despite agreeing to the conditions of house arrest, and being warned that he would be tested for drug use, Gunter tested positive for cocaine, in March 2000. His probation was duly revoked and he was transferred to Parchman to serve his full sentence of eight years.
 ¶ 2. In November 2001, Gunter filed a motion to vacate conviction and/or correct sentence as a motion for post-conviction relief under Miss. Code Ann. § 99-39-1. In December of that same year, his motion was denied by the trial court. He now files his appeal.
 STATEMENT OF ISSUES I. WHETHER THE PETITIONER'S GUILTY PLEA WAS KNOWING AND VOLUNTARY.
 II. WHETHER DURING A GUILTY PLEA THE STATE MUST PROVE THE ELEMENTS OF THE OFFENSE.
 III. WHETHER THE PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 IV. WHETHER THE PETITIONER'S SENTENCE WAS EXCESSIVE AND OUTSIDE THE STATUTORY LIMITS.
 V. WHETHER THE PETITIONER CAN APPEAL HIS CONVICTION AFTER PLEADING GUILTY.
 ANALYSIS I. WHETHER THE PETITIONER'S GUILTY PLEA WAS KNOWINGLY, FREELY, INTELLIGENTLY AND VOLUNTARY MADE.
 ¶ 3. One of the primary arguments is that Gunter's plea of guilty was *Page 197 
involuntary as a matter of law since, he was frightened into pleading because of his age and first time offender status and the prosecution "played an active role in entering a plea of guilty." Gunter citesCourtney v. State, 704 So.2d 1352 (Miss. 1997), claiming that because of the State's participation in the plea process, not only is the plea invalid but the sentence and conviction should be invalid as well.
 ¶ 4. The United States Supreme Court case of Boykin v. Alabama,395 U.S. 238, 242 (1969), provides the standard for determining whether a guilty plea is knowingly, voluntarily and intelligently made by the defendant. Where the record is silent as to evidence showing that these rights were known and understood by the defendant, there can be no presumption of a waiver of such rights by him. Id. at 242. The record must provide explicit evidence of such a waiver and the admissibility of the waiver must be "based on a reliable determination on the voluntariness" of the waiver. Id. This determination of voluntariness may be evaluated by looking to see whether the defendant was advised of the nature of the charges against him, the rights which he would be waiving by pleading guilty, the maximum sentences that he could receive for the crimes with which he was charged and whether he was satisfied with the advice and counsel of his attorney. Alexander v. State, 605 So.2d 1170, 1172 (Miss. 1992). See also Boykin, 395 U.S. at 243; Wilson v. State, 577 So.2d 394,396-97 (Miss. 1991).
 ¶ 5. We must note that the transcript of the plea hearing speaks volumes on the issue of voluntariness. The judge specifically asked Gunter whether he was aware that by pleading guilty he was giving up certain constitutional rights, such as the right to a trial by jury. Gunter clearly answered that he understood.
 ¶ 6. According to the transcript, Gunter further made it crystal clear to all listening that he understood that his guilty plea would serve as a waiver to all of the constitutional rights that the circuit judge had mentioned. Finally, he lucidly stated that he was not being coerced and that he was not under the influence of any form of impairing drug. As stated in Knight v. State, 796 So.2d 262, 264 (Miss.Ct.App. 2001),
 [w]hen the trial court can determine that a factual assertion by the movant in a post conviction relief proceeding is belied by unimpeachable evidence in the transcript of the case that led to conviction, no hearing is required and the trial court may summarily dismiss the motion. Harris v. State, 578 So.2d 617, 620 (Miss. 1991).
 ¶ 7. Gunter argues that because the prosecution became an active participant in the plea process, the plea was rendered involuntary. If Gunter actually believes that answering two questions constitutes an active participation, therefore rendering the plea involuntary, he should try reading the entire transcript and not just a paragraph. The record contains numerous questions clearly illustrating that Gunter knew exactly what he was doing — pleading guilty. In no less than three areas of the transcript the judge questioned Gunter regarding his guilty plea.
 Q. At this time how do you wish to plead to the charge of possession of cocaine more than two grams, guilty or not guilty?"
 A. Guilty.
 Q. Mr. Gunter, before a jury could find you guilty of this charge now, the State would have to come to court and prove to the jury that you were guilty beyond a reasonable doubt. *Page 198 
When you plead guilty, your — the State's not required to prove anything. You understand that?
 A. Yes, sir.
 Q. You're admitting that you're guilty. You understand?
 A. Yes, sir
 Q. Now on the indictment says that on May-March the twentieth of this year in Lowndes County you possessed this cocaine in an amount of two point six four grams. Are you guilty of possession of this cocaine.
 A. Yes, sir.
 ¶ 8. It should be noted that Gunter did cite two cases and a rule in support of his position that prosecutorial involvement renders a plea involuntary. Gunter cites Wilson v. State, 577 So.2d 394 (Miss. 1991), and paraphrases (what this Court can only assume is the court's holding) "because of the prosecutor's participation in the plea process, and because the prosecution had an interest in obtaining the plea so as to relieve the prosecution from proof of the element of the amount of cocaine, which they could not prove, the plea is involuntary." After reading this case it can safely be said that it has nothing to do with prosecutorial participation in the plea process, although it does mention what is considered a voluntary plea.
 ¶ 9. The same can be said for the other case cited, Courtney v.State, 704 So.2d 1352 (Miss. 1997). However, at least in this case it mentions that "trial judges are expressly prohibited from participating directly in any plea discussion with a criminal defendant" but again, nothing about prosecutorial participation. And last, but not least, Gunter cites Rule 8.04 of the Mississippi Uniform Circuit and County Court Rules, which Gunter says "requires that the defendant personally plead guilty in open court before any such plea is entered." This Court does not find that the rule states any of this. The rule does state:
 When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine; (1) that the accused is competent to understand the nature of the charge; (2) that the accused understands the nature and consequences of the plea; and (3) that the accused understands that by pleading guilty he waives his constitutional rights.
URCCC 8.04(4).
 ¶ 10. Gunter has given this Court no plausible evidence on which we may rely to overturn the decision of the trial judge to accept Gunter's plea. The credible evidence before us, including the transcript of the plea hearing, points to the inescapable fact that Gunter made his decision to plead guilty on his own, without coercion and without misrepresentation. The prosecution's entering into the plea bargaining discussion, in what amounts to about five seconds, hardly constitutes a plea being rendered involuntary. We do not believe that Gunter has met his very heavy burden of proof to show that he did not understand what he was agreeing to or that he was pressured or intimidated into executing the guilty plea petitions.
 II. WHETHER DURING A GUILTY PLEA THE STATE MUST PROVE THE ELEMENTS OF THE OFFENSE.
 ¶ 11. Gunter's next argument is that the prosecution never introduced proof that the amount of cocaine was in excess of 2.64 grams. It is true that the State never introduced the 2.64 grams of cocaine which it asserted to have as evidence, however, the reason is very simple — they did not have to. The court, in *Page 199 Jefferson v. State, 556 So.2d 1016, 1019 (Miss. 1989), stated that the law is well settled that when properly entered and accepted, "a guilty plea operates to waive the defendant's privilege against self-incrimination, the right to confront and cross-examine the prosecution's witnesses, the right to a jury trial and the right that the prosecution prove each element of the offense beyond a reasonable doubt."See also Johnson v. State, 753 So.2d 449 (Miss. 1999). The record clearly indicates that the judge questioned Gunter on whether he knew that by pleading, he would be waiving this particular right along with others. Gunter responded in the affirmative, that he understood. Therefore, there is absolutely no merit to this claim.
 III. WHETHER THE PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 ¶ 12. Another argument made by Gunter is that he received ineffective assistance of counsel since defense counsel failed to perform an independent investigation of the evidence which the State alleged to have had against Gunter. Gunter also claims that defense counsel "stood idly by and permitted the prosecution to interfere with and plead him guilty under the court's inquiry."
 ¶ 13. In Burnett v. State, 831 So.2d 1216, 1220 (¶ 17) (Miss.Ct.App. 2002), the Court states that the judge's findings concluding the plea was validly made and that counsel was effective will not be set aside unless the findings are clearly erroneous. The Supreme Court of the United States in the case of Strickland v. Washington,466 U.S. 668 (1984), clearly set the guidelines for judicial determination of cases involving effective or ineffective assistance of counsel.
 ¶ 14. There are two components that Gunter must prove in order for his claim of ineffective assistance of counsel to prevail and require reversal of his conviction. First, Gunter must show that his "counsel's performance was deficient." Strickland, 466 U.S. at 687. Second, Gunter must show the "deficient performance prejudiced the defense." Id. This requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In regards to this second prong, Gunter must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland,466 U.S. at 694; see Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985);Stringer v. State, 454 So.2d 468, 477 (Miss. 1984). Gunter must proveboth of these elements in order to succeed on his claim. Id. Each case should be decided based on the totality of the circumstances, that is, by looking to the evidence in the entire record. McQuarter v. State,574 So.2d 685, 687 (Miss. 1990); Stringer, 454 So.2d at 476. The standard of performance used is whether counsel provided "reasonably effective assistance." Leatherwood, 473 So.2d at 968. "There is a strong presumption that counsel's conduct is within the wide range of reasonable professional conduct." Id. at 969. Should we find that Gunter's counsel was ineffective, the appropriate remedy is remand for a new trial. Moodyv. State, 644 So.2d 451, 456 (Miss. 1994).
 ¶ 15. While the record shows that defense counsel was present at the time of the plea acceptance hearing and the circuit judge's interrogation, there is no evidence which would tend to advance Gunter's theory that defense counsel was deficient or that he forced Gunter to plead guilty. *Page 200 
There is nothing in the record to indicate that Gunter's attorney did anything more than be available to his client and advise him on the ramifications of pleading guilty versus pleading not guilty and taking his chances at trial. Lastly, there is nothing in the record that even hints that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. Therefore, Gunter has failed to prove at least the second element of the Strickland
test, a test in which he must prove both elements in order to prevail on his claim of ineffective assistance of counsel.
 IV. WHETHER THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE ON THE DEFENDANT.
 ¶ 16. Another argument presented by Gunter was that his sentence was excessive. However, in his opinion and order denying petitioner's motion, Judge Howard specifically noted that "the petitioner received a sentence of eight years to serve with the MDOC, suspended, one year of the Intensive Supervision Program and five years of probation thereafter for a charge of possession of cocaine greater than two grams, well within the maximum sentence authorized by law."
 ¶ 17. The court in Johnson addresses the issue of an excessive or disproportionate sentence in stating "that a trial court will not be held in error or held to have abused its judicial discretion if the sentence imposed is within the limits fixed by statute." Johnson,461 So.2d at 1292. During the plea colloquy, Judge Howard explained that he was required by law to sentence a defendant charged with possession of cocaine to not less than four years and no more than sixteen years in the Mississippi Department of Corrections and could impose a fine up to two hundred and fifty thousand dollars. Gunter received only a sentence of eight years with the MDOC, suspended, one year of the Intensive Supervision Program and five years of probation.
 ¶ 18. In conclusion, the sentence imposed on Gunter was nowhere near excessive. As anyone can see, this sentence is well within the statutory limits. Therefore, Gunter's claim that his sentence was excessive is totally without merit.
 V. WHETHER THE PETITIONER CAN APPEAL HIS CONVICTION AFTER PLEADING GUILTY.
 ¶ 19. On the argument that the trial court erred in advising Gunter that he had no right to appeal his sentence, again the record speaks for itself. During the plea colloquy, Gunter was specifically informed that his guilty plea waived his right to appeal his conviction. The judge explicitly announced that "if a jury tried this case and a jury found you guilty, you could appeal to the Mississippi Supreme Court, but you can't appeal when you plead guilty." It was explained in Miller v.State, 794 So.2d 1065 (¶ 6) (Miss.Ct.App. 2001), that "because the legislature and precedent do not confer jurisdiction upon this Court to review a guilty plea on direct appeal, this Court finds that Miller's claim that the trial court erred by not allowing him to withdraw his plea is better addressed in a motion for post conviction relief." Also included in Judge Howard's order, denying Gunter's motion, the court correctly informed him that he could not appeal a plea of guilty to the supreme court and that petitioner's options in having a guilty plea reviewed involve filing a motion for post-conviction relief.
 ¶ 20. Gunter cites the case of Trotter v. State, 554 So.2d 313,315 (Miss. 1989), claiming that this case demonstrated that it is possible to appeal directly to the Mississippi Supreme Court. However, in *Page 201 
viewing this case in its entirety, it states "while the conviction itself cannot be appealed, an illegal sentence handed down pursuant to the plea is appealable." Trotter, 554 So.2d at 315. Therefore, it becomes a question of whether the petitioner claims his plea was involuntary or whether he claims his sentence was illegal. If the latter is the claim, the guilty plea is directly appealable. Id.
 ¶ 21. As it is obvious to all, Gunter is challenging his conviction and not that his sentence was illegal. Since he is challenging his conviction, the law and statute stand correct. His only relief was a motion for post-conviction relief.
 ¶ 22. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT DENYINGPOST-CONVICTION RELIEF IS HEREBY AFFIRMED. COSTS OF THIS APPEAL AREASSESSED TO LOWNDES COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., THOMAS, LEE, IRVING,MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.