ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. Scott Leavitt pleaded guilty to four counts of child exploitation, in violation of Mississippi Code Annotated section 97-5-33 (Rev.2006), in the Circuit Court of Marshall County. Subsequent to his guilty plea, Leavitt motioned the court for post-conviction collateral relief, but he was denied as the trial court opined that his motion was time-barred. Leavitt’s now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. On September 19, 2002, Leavitt was indicted on four counts of sexual battery, in violation of Mississippi Code Annotated sections 97 — 3—95(l)(a) and 97 — 3—95(l)(c) (Rev.2006), and four counts of child exploitation in violation of Mississippi Code Annotated section 97-5-33 (Rev.2006). On May 18, 2003, Leavitt submitted to the Circuit Court of Marshall County his petition requesting to submit an open plea of guilty to the four counts of child exploitation. More specifically, he wished to plead guilty to taking sexually explicit photographs of his girlfriend’s two daughters. The remaining four counts of sexual battery would eventually be retired to the files by the State. Following a plea hearing on May 19, 2003, the trial court accepted Leavitt’s open guilty plea and, after reviewing a pre-sentence report, sentenced him on May 30, 2003, to twenty years per count, with twelve years suspended per count, and all sentences to run consecutively. Additionally, Leavitt was ordered to pay court costs and fees totaling $1,250.50.
¶ 3. Leavitt filed his motion for post-conviction collateral relief pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Mississippi Code Annotated section 99-39-1-99-39-29 (Rev.2007), on May 8, 2006. The trial court denied Leavitt’s request for relief stating:
After reviewing the documents filed by the Petitioner, as well as the court file in this case, and considering all matters in a light most favorable to the Petitioner, *983 it appears to the Court that the Petitioner is requesting relief that is time barred. The Court is of the opinion that the Petitioner is not entitled to the requested relief. Accordingly, the relief is hereby DENIED.
¶ 4. Aggrieved, Leavitt appeals and raises several issues, including ineffective assistance of counsel; the involuntariness of his guilty plea; and violations of his constitutional rights. He also claims that the trial court erred by denying his motion for post-conviction collateral relief as time-barred. Finding the trial court’s holding, denying Leavitt’s motion as time-barred, was made in error, we reverse and remand for further consideration consistent with this opinion.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN DENYING LEAVITT’S MOTION FOR POST-CONVICTION COLLATERAL RELIEF AS TIME-BARRED.
¶ 5. We begin our analysis of Leavitt’s points of argument with his last enumerated assignment of error. Namely, he claims the trial court erred in denying his motion as time-barred. After reviewing the record, we agree.
¶ 6. Mississippi Code Annotated section 99-39-5(2) (Rev.2007) states, in pertinent part, “[a] motion for relief under this article shall be made ... in [the] case of a guilty plea, within three (3) years after entry of the judgment of conviction.” Miss.Code Ann. § 99-39-5(2). Leavitt pleaded guilty on May 19, 2003, and an order accepting his plea was filed the same day. Therefore, he had until May 19, 2006, to timely file a motion requesting relief under the Mississippi Uniform Post-Conviction Collateral Relief Act. Leavitt filed his motion on May 8, 2006. Accordingly, his motion was timely filed, and the trial court erred in holding otherwise.
¶ 7. Regarding the other issues raised by Leavitt in his motion for post-conviction collateral relief, we note that whether the trial court reviewed the remaining issues in holding Leavitt’s motion was time-barred is ambiguous at best. The trial court stated it was “of the opinion that the Petitioner is not entitled to the requested relief.” However, the trial court is presumed to have reviewed Leavitt’s claims in accordance with the statutory mandate of Mississippi Code Annotated section 99-39-11 (Rev.2007) which states that “[t]he original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned.” Miss.Code Ann. § 99-39-11(1) (Rev.2007). Furthermore, a petitioner’s motion for post-conviction collateral relief may only be dismissed “[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief_” Miss.Code Ann. § 99-39-11(2) (Rev.2007) (emphasis added). Therefore, having found Leavitt’s motion was properly before the trial court, we now address his remaining issues on appeal in an effort to promote judicial efficiency and provide the trial court guidance on those issues worthy of further scrutiny.
II. WHETHER LEAVITT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 8. Leavitt asserts several instances of ineffective assistance of counsel based upon his hired attorney’s actions and inac-tions throughout the proceedings in the circuit court. A majority of Leavitt’s claims of ineffective assistance are totally devoid of merit and will be discussed be *984 low. One, however, requires additional inquiry, and it is remanded to the trial court for further consideration.
¶ 9. All criminal defendants, regardless of the severity of their crimes, have a constitutional right to effective assistance of counsel. See, U.S. Const, amend. VI. However, in order to succeed on a claim of ineffective assistance, a defendant must show that “counsel’s representation fell below an objective standard of reasonableness.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 10. To meet the burden placed upon a defendant alleging ineffective assistance of counsel the defendant must satisfy a familiar two-step inquiry. A defendant must show not only that his counsel’s performance was deficient, but also he was prejudiced by the deficient representation. Jones v. State, 962 So.2d 1263, 1273(¶ 41) (Miss.2007) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). This second hurdle requires the defendant show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The supreme court has recognized that “a strong presumption of competence exists in favor of the attorney.” Havard v. State, 928 So.2d 771, 780(¶ 7) (Miss.2006) (citing Mohr v. State, 584 So.2d 426, 430 (Miss.1991)).
¶ 11. When reviewing claims of ineffective assistance of counsel, the supreme court has stated:
This Court looks at the totality of circumstances to determine whether counsel’s efforts were both deficient and prejudicial. “Judicial scrutiny of counsel’s performance [is] highly deferential.” There is a strong but rebuttable presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that but for the attorney’s errors, the outcome of the trial would have been different, will we find that counsel’s performance was deficient.
Walker v. State, 863 So.2d 1, 22(¶63) (Miss.2003) (quoting Russell v. State, 849 So.2d 95, 122 (¶ 102) (Miss.2003)). Finally, “[Counsel’s choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall[s] within the ambit of trial strategy.” Cole v. State, 666 So.2d 767, 777 (Miss. 1995) (citing Murray v. Maggio, 736 F.2d 279 (5th Cir.1984)). With this standard in mind, we will address each of Leavitt’s arguments in turn.
A. WHETHER LEAVITT’S ATTORNEY FAILED TO INFORM LEAV-ITT OF THE ALLEGATIONS AGAINST HIM.
¶ 12. Leavitt argues under the headings “Claim One,” “Claim Two,” “Claim Seven,” “Claim Eight,” and “Claim Nine” that his counsel was ineffective in failing to discuss the elements of the crime he was charged with, failing to show him statements from the two victims in this case, failing to discuss the pre-sentence investigation report (PSI) which contained the statements, and failing to challenge the statements and the PSI as the statements allegedly contained falsehoods. Leavitt continues that as a result of his counsel’s inaction, in this regard, Leavitt was prejudiced in that he was not informed of the charges against him and would not have pleaded guilty had he known what the statements said.
¶ 13. The statements Leavitt refers to, as far as the Court can determine, are not statements at all, but a narrative of the events that led to Leavitt’s arrest taken from the district attorney’s file. However, the narrative does contain second-hand *985 statements from the children that Leavitt allegedly to photographed. The first statement was from KKH. The narrative states that KKH claimed when she was eight years old Leavitt began fondling her and, along with KKH’s mother, photographing her while she was naked. The narrative continued with the statement of the second child, CMH. CMH stated Leav-itt began fondling and touching her when she was eleven years old, but there is no mention of any photographs being taken. As taken from the PSI, Leavitt’s version was that his girlfriend, the girls’ mother, “starting taking pictures of the girls, [and] I never told her to stop. There was never any force or violence involved.”
¶ 14. During Leavitt’s sentencing hearing, CMH, who was eighteen at the time of the hearing, testified that Leavitt began photographing her when she was six and a half years old, and he last photographed her when she was sixteen and a half years old. CMH continued in her testimony describing how Leavitt’s actions, including both the sexually explicit photographs and touching, affected her life which need not be repeated here. KKH was next to testify. She was seventeen years old at the time of the hearing. She stated that Leav-itt began taking photographs of her when she was eight years old and stopped when she was fifteen years old. Like her sister, KKH also expounded upon the effect Leavitt’s actions had on her.
¶ 15. Throughout this testimony, which is consistent with the girls’ statements included in the PSI’s narrative, Leavitt made no objection of any sort on the record. In fact, following the children’s testimony Leavitt himself testified. At the outset of his testimony the trial court stated, “Mr. Leavitt, you have pleaded guilty to taking or assisting in taking sexually explicit pictures of these young ladies that just testified. Can you give us a brief resume of your life, your childhood especially, what got you to this point?” At this point, which was an opportune time to object to the factual accuracy of the victim’s testimony, especially given the language used by the trial court, Leavitt made no objection and spoke only to the tragedies of his childhood.
¶ 16. As to Leavitt’s claim that his counsel did not inform him of the charges against him, we note the language of his petition requesting the trial court to accept his guilty plea. It stated, in pertinent part, “3. I plead guilty to the charge(s) of (the following hand written) photographing a child in sexually explicit conduct as per Section 97-5-33 Mississippi Code Annotated, 1972 (4 counts) counts 5-8 (the following type written) as set forth in the indictment in this cause number.” Speaking to this document at the plea hearing, the following colloquy occurred::
THE COURT: In any event, as I asked you a minute ago, you’re pleading guilty to four counts of child exploitation; correct?
LEAVITT: Yes, sir.
THE COURT: All right. On the last page of the petition, there’s a signature line that purports to bear your signature. Did you sign this document?
LEAVITT: Yes, sir.
THE COURT: All right. Before you signed it, did you go over it with your attorney, Mr. Beck?
LEAVITT: Yes, sir.
THE COURT: Do you feel comfortable that your attorney has explained to you what rights you have that you may be waiving or giving up by pleading guilty?
LEAVITT: Yes, sir.
*986 THE COURT: Okay. Did your attorney answer any questions that you had for him, if any?
LEAVITT: Yes, sir.
THE COURT: All right. Did you tell your attorney everything about the facts and circumstances that gave rise to these charges being brought against you? Did you tell your attorney about what happened that caused you to get arrested?
LEAVITT: Yes.
THE COURT: Okay. You didn’t withhold anything from your attorney?
LEAVITT: No.
THE COURT: Okay. Are you satisfied with the services of your attorney in this matter, feel like he’s adequately and properly represented you?
LEAVITT: Yes.
¶ 17. At Leavitt’s sentencing hearing, the following colloquy took place:
THE COURT: Also, since the date that the Court accepted your guilty plea, the Court, at that time, requested a pre-sentence investigation to be conducted, and I requested the same from the Department of Corrections, and that had been provided to me. Has everybody had an opportunity to see and review the pre-sentence investigation prepared by the Department of Corrections?
MR. BECK: I have read it. Mr. Leav-itt hadn’t had an opportunity to see it. I went over it and told him what was in it. I don’t think that it poses a problem.
THE COURT: I want to make sure that he has an opportunity to let you know if there’s anything in there that he believes to be incorrect. So—
MR. BECK: If we could have five to ten minutes.
THE COURT: All right. All right. I’m going to stay right here.
MR. BECK: He’s read it, Your Honor.
THE COURT: You have reviewed it?
LEAVITT: (NODDED HEAD UP AND DOWN)
¶ 18. From the record before us, Leavitt’s claims of ineffective assistance of counsel must fail with regards to the statements of CMH and KKH and the allegations against him. A review of the statements of the children contained in the PSI and their testimony at the sentencing hearing reveals no inconsistency. Furthermore, Leavitt had an opportunity to review the PSI and to raise any disagreement he had with its contents on the record. He voiced none. Lastly, from a review of the petition seeking approval to enter a guilty plea it is apparent that the specifics of Leavitt’s crimes were spelled out. Any claim that he did not know he was pleading guilty to “photographing a child in sexually explicit conduct” falls on deaf ears. This issue is without merit.
B. WHETHER LEAVITT’S ATTORNEY WAS CONSTITUTIONALLY INEFFECTIVE IN HIS INVESTIGATION OF LEAVITT’S CASE.
¶ 19. Under the headings of “Claim Six” and “Claim Ten,” Leavitt next asserts that his counsel rendered ineffective assistance of counsel in failing to properly investigate prior to the guilty plea and sentencing hearing. He further claims this investigation would have led to additional mitigating evidence that could have been presented at his sentencing hearing. Specifically, Leavitt lists two inconsistences in the evidence against him that he alleges further investigation by his attorney would have illuminated, and by extension, would have assisted in his defense.
¶ 20. First, Leavitt states that he did not take any pictures after his heart sur *987 gery on November 8, 2000. He claims that as a result of this it is a factual impossibility for him to be guilty of counts five through eight as they alleged he took the sexually explicit photographs in December 2001 and January 2002. However, Leavitt failed to sufficiently establish this fact in his motion to the trial court. He did not include with his motion a “separate statement of the specific facts which are within the personal knowledge of the petitioner and which shall be sworn to by the petitioner,” required by Mississippi Code Annotated section 99 — 39—9(l)(d) (Rev. 2007). Further, he failed to present any competent evidence to establish the last time he took pictures of the girls, the date of his heart surgery, or any facts that would lend credence to his current claims of innocence. Additionally, the record similarly contains none.
¶21. Secondly, Leavitt claims that there were inconsistencies in CMA’s statement included in the PSI and her testimony at the sentencing hearing. Specifically, he claims CMA stated that the photographs started when she was ten or eleven, but later she testified that they began when she was six. Leavitt’s claims are simply inaccurate. As stated above, in the statement accompanying the PSI, CMA stated that Leavitt began touching her when she was eleven, but she made no mention of pictures being taken. During her testimony at the sentencing hearing she claimed Leavitt began photographing her when she was six and a half years old. This alleged “inconsistency” is nonexistent.
¶ 22. Leavitt’s claim that his attorney’s alleged lack of investigation constitutes ineffective assistance of counsel must fail as the record contains no indication in support of it. Leavitt fails to bring forth any evidence of what this further investigation would have revealed, other than his claims addressed above, or how this evidence would have aided in mitigation of his sentence. These issues are without merit.
C. WHETHER LEAVITT’S ATTORNEY WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO REQUEST A COMPETENCY HEARING.
¶ 23. Under the headings “Claim Seven” and “Claim Eleven,” Leavitt next claims his counsel was ineffective in failing to file a petition requesting an expert in psychiatry to assist the defense and in failing to request a competency hearing. However, as to his request for a psychiatric expert, Leavitt puts forth absolutely no evidence, or even argument, of how having an expert in the field of psychiatry would have assisted his counsel in preparation for a possible trial, his guilty plea, or sentencing hearing. As such, his claim of ineffective assistance must fail as Leavitt has failed to meet the first prong of Strickland.
¶24. As to Leavitt’s other claim regarding the lack of a competency hearing, it too must fail. Leavitt’s counsel petitioned the trial court for a psychiatric and physical examination of Leavitt, which was subsequently granted. The resultant report of the Mississippi State Hospital stated:
We are unanimous in our opinion that Mr. Leavitt has the sufficient present ability to consult with an attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as factual understanding of the nature and object of the legal proceedings pending against him.
[[Image here]]
Finally, it is our unanimous opinion that Mr. Leavitt has the capacity knowingly, intelligently, and voluntarily to waive or assert his constitutional rights.
*988 DISCUSSION: Although Mr. Leavitt has reported experiencing longstanding depressive symptoms, and has reported some recent suicidal ideation, he does not appear to have a major mental disorder at this time. It also is my opinion that Mr. Leavitt was not suffering from any major mental disorder at the time of the alleged offenses such that he would not have known the nature, quality, and wrongfulness of his alleged acts at those times.
Mr. Leavitt also has reported some problems with his memory. In my opinion, his reported memory deficits should not preclude him from being able to discuss his mental state and his actions at the time of the alleged offenses with his attorney.
¶ 25. Given the findings of the Mississippi State Hospital, we find that Leavitt’s counsel was not deficient in failing to request a competency hearing. This issue is without merit.
D. WHETHER LEAVITT’S ATTORNEY WAS CONSTITUTIONALLY EFFECTIVE IN FAILING TO CHALLENGE THE INDICTMENT.
¶ 26. Leavitt’s final claim of ineffective assistance of counsel that this Court will address is that his attorney rendered ineffective assistance of counsel in failing to challenge the indictment under which he was charged. Under the title of “Claim Fifteen,” Leavitt argues that his indictment contains several errors that render it invalid. The only alleged error Leavitt speaks to in his motion was listed as follows:
Count One and Three charge the petitioner with a violation of Section 97-3-95(a), this section does not exist. Counts Two and Four charge the petitioner with a violation of 97-3-95(c), this section does not exist. Pursuant to 97-3-101(1) and then proceeds to state life imprisonment as a possible sentence. Mississippi Code Ann. § 97-3-101(3) does list life as a possible sentence for violation of 97 — 3—95(l)(d). This being the case defense should prepare to contest the age of the victim’s as being above 14 as 97 — 3—95(l)(d) states in pertinent part (d) A child under the age of fourteen (14) years of age.
¶ 27. After examining Leavitt’s indictment we can identify none of the other errors alluded to by Leavitt. Additionally, notwithstanding the fact that Leavitt now contests the validity of counts within his indictment to which he did not enter a plea of guilty to, the errors listed are of no concern.
¶ 28. Counts one and three of Leavitt’s indictment allege that he:
did unlawfully, willfully and feloniously engage[d] in sexual penetration with [CMH], by inserting his finger into the vaginal opening of said [CMH] without her consent, in violation of the provisions of Section 97~3~95(a) of the Mississippi Code of 1972, Annotated, as amended, which offense is punishable pursuant to Section 97-3-101(1) of Mississippi Code of 1972, Annotated, as amended, by life in the State Penitentiary or such lesser term of imprisonment in the penitentiary for not more than thirty (30) years....
Counts two and four state that Leavitt:
unlawfully, willfully and feloniously engaged] in sexual penetration, with [KKH], a child at least fourteen (14) but under sixteen (16) years of age, by inserting his finger into the vaginal opening of said [KKH], a child who was fifteen (15) years of age at the time ... and while Scott J. Leavitt was at the time more than Thirty-Six (36) months older than [KKH] ... in violation of the *989 provisions of Section 97-3-95(c) of the Mississippi Code of 1972, Annotated, as amended....
¶ 29. While Leavitt is correct that sections 97-3-95(a) and 97-3-95(c) do not exist, his claim still must fail. Reference to an incorrect code section within an indictment will not cause the indictment to be defective so long as the language of the indictment serves to put the defendant on notice of the charges against him. Culp v. State, 933 So.2d 264, 277(¶40) (Miss.2005). The verbiage of the indictment closely tracks the specific language of section 97-3-95(l)(a) and 97 — B—95(l)(c), with alteration only for the specifics of the crime charged. Any error resulting from exclusion of the numerical marker of the specific statute charged was harmless. Therefore, Leavitt’s counsel was not deficient in failing to challenge the indictment on this ground.
¶ 30. Reference to a possible life sentence in counts one and three was also an error in the indictment. The sentence range listed for violation of Mississippi Code Annotated section 97-3-95(l)(a) (Rev.2006) is “not more than thirty (30) years, and for a second or subsequent such offense ... not more than forty (40) years.” Miss.Code Ann. § 97-3-101(1) (Rev.2006). Life was simply not an option. As to this error in the indictment, Leavitt claims under “Claim Fifteen” as well as “Claim Four” that his plea was involuntary as a result of this, and his counsel was ineffective in failing to challenge this.
¶ 31. As to Leavitt’s claim of ineffective assistance of counsel with regard to the sentence error, we hold that this issue is without merit as well. Had his attorney motioned the trial court challenging the sufficiency of the indictment on the basis that it listed an incorrect sentence, his motion would have been denied. As noted above, the purpose of the indictment is to put the defendant on notice of the charges against him. Culp, 933 So.2d at 277(¶ 40). The indictment in question satisfied this purpose, and any reference to an incorrect sentence was mere surplusage.
 ¶ 32. We now move to Leavitt’s claim that his guilty plea was not knowingly, voluntarily, and intelligently given as a result of the sentence error. A guilty plea must be voluntarily, intelligently, and knowingly entered to be binding on a criminal defendant. Spry v. State, 796 So.2d 229, 231(¶ 6) (Miss.2001). To determine this, an appellate court must find that “the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea.” Wilson v. State, 577 So.2d 394, 397 (Miss.1991). The petitioner carries the burden of proof to demonstrate his plea was not voluntary, intelligently, and knowingly given. Hannah v. State, 943 So.2d 20, 25(¶ 11) (Miss.2006).
¶ 33. With this standard in mind, we find that it is clear from the plea colloquy that Leavitt has failed to meet his burden under this issue. Prior to his guilty plea, Leavitt was ordered to undergo a mental evaluation. The record shows that during his stay with the Mississippi State Hospital, he was informed that he was facing two life sentences, as well as an additional term of years. As noted above, this information was incorrect. However, other than Leavitt’s post-plea claim in his motion that this had some influence on his decision to pleaded guilty, there is nothing in the record to substantiate his claim. Additionally, we note solemn declarations made in open court carry with them a strong presumption of validity. Id.
¶ 34. During Leavitt’s plea, the trial court asked, “[h]as anybody done anything *990 to threaten you, intimidate you, coerce or otherwise force you to plead guilty?” Leavitt responded in the negative, giving no indication that the erroneous statement of the hospital personnel regarding a life sentence had any influence on his decision. This issue is without merit.
III. WHETHER THE TRIAL COURT ERRED IN ASSESSING FEES AND COSTS ASSOCIATED WITH LEAVITT’S HEARINGS.
¶ 35. As a part of the order sentencing Leavitt in accordance with his guilty plea, the trial court assessed court fees and costs against Leavitt in the amount of $1,250.50. Leavitt claims the trial court erred by not informing him of this “forfeiture” prior to his guilty plea. However, it is clear that the costs assessed to Leavitt were not a forfeiture as that term is used to imply a condition of his plea, but the costs are the statutorily imposed costs of participating in Mississippi courts. See Miss.Code Ann. §§ 9-13-21 (Rev.2002), 9-17-5 (Rev.2002), 19-7-31 (Rev.2003), 25-7-13 (Rev.2006), 25-7-19 (Rev.2006), 99-19-73 (Rev.2007). This issue is without merit.
IV. WHETHER THE STATE FAILED TO PROVIDE LEAVITT’S ATTORNEY WITH ALL DISCOVERY.
¶ 36. Under the title “Claim Fourteen,” Leavitt claims that “important evidence was omitted from the discovery.” He argues that computer files were excluded from the discovery his attorney received. Elsewhere in his motion, he claims that these flies were “time stamped.” He further argues that these “time stamped” flies would show that he did not do what he pleaded guilty to and cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in support. However, unlike the facts of Brady, Leavitt fails to include in his motion any proof of his allegations. He fails to provide any evidence that the State failed to disclose the files. Furthermore, assuming the files were not provided to his attorney, Leavitt fails to show how they would have affected his decision to pleaded guilty other than bare allegations contained within his motion. Without more, this issue is without merit.
V.WHETHER LEAVITT’S REMAINING ISSUES MERIT REVERSAL.
¶ 37. Leavitt’s remaining issues will not be addressed by this Court, and are remanded to the trial court for further consideration after an evidentiary hearing is conducted in accordance with Mississippi Code Annotated section 99-39-19 (Rev. 2007). Specifically, “Claim Three” of Leavitt’s motion alleges that his counsel provided ineffective assistance by not informing Leavitt of a plea bargain offered by the State. An attached affidavit of Leavitt’s brother substantiates this claim wherein he states that Leavitt’s attorney claimed he turned down a “twenty year plea bargain” without consulting Leavitt. It is the duty of a defense attorney “not [to] conclude any plea bargaining on behalf of the defendant without the defendant’s full and complete consent....” URCCC 8.04(B)(3). Depending on the specifics of the alleged plea bargain, whether it was timely conveyed to Leavitt and other factors to be addressed at an evidentiary hearing, a finding of ineffective assistance of counsel may not be inappropriate.
¶ 38. “Claim Five” shall also be examined by the trial court. Leavitt claims the trial court accepted his guilty plea without first advising him of the nature of the charges against him or establishing a factual basis for the plea. The following colloquy represents the extent to which the *991 trial court advised Leavitt of the elements of the crime of which he was charged or delved into the factual basis of Leavitt’s plea of guilt:
THE COURT: ... In any event, as I asked you a minute ago, you’re pleading guilty to four counts of child exploitation; correct?
LEAVITT: Yes, sir.
THE COURT: All right. On the last page of the petition, there’s a signature line that purports to bear your signature. Did you sign this document?
LEAVITT: Yes, sir.
THE COURT: All right. Before you signed it, did you go over it with your attorney, Mr. Beck?
LEAVITT: Yes, sir.
THE COURT: Do you feel comfortable that your attorney has explained to you what rights you have that you may be waiving or giving up by pleading guilty?
LEAVITT: Yes, sir.
THE COURT: Okay. Did your attorney answer any questions that you had for him, if any?
LEAVITT: Yes, sir.
THE COURT: All right. Did you tell your attorney everything about the facts and circumstances that gave rise to these charges being brought against you? Did you tell your attorney about what happened that caused you to get arrested?
LEAVITT: Yes.
THE COURT: Okay. You didn’t withhold anything from your attorney?
LEAVITT: No.
¶ 39. Uniform Rule of Circuit and County Court Practice 8.04(A)(3) states, “[b]efore the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea.” URCCC 8.04(A)(3) (emphasis added). The purpose of this requirement has been aptly stated as such:
to push the court to delve beyond the admission of guilt lying on the surface and determine for itself whether there is substantial evidence that the petitioner did in fact commit those crimes he is charged with and is not entering the plea for some other reason that the law finds objectionable.
Reed v. State, 799 So.2d 92, 97(¶ 13) (Miss. Ct.App.2001). Therefore, the requirement of establishing a factual basis cannot be satisfied from the lone fact that a guilty plea was entered. Gladney v. State, 963 So.2d 1217, 1221(1114) (Miss.Ct.App.2007). The record must contain “an evidentiary foundation ... which is ‘sufficiently specific to allow the court to determine that the defendant’s conduct was within the ambit of that defined as criminal.’ ” Id. (quoting Lott v. State, 597 So.2d 627, 628 (Miss. 1992)). Such is lacking in the record before us. While the testimony of KKH and CMH during the sentencing hearing, as well as their “statements” in the PSI, provide an evidentiary foundation, they were not available to the trial court at the time the guilty plea was accepted.
¶ 40. Leavitt’s final issue, identified as “Claim Thirteen,” alleges that his constitutional right to speedy trial was violated. However, at this time, this issue is moot as Leavitt waived any right he had to relief based upon violation of his right to a speedy trial. McVeay v. State, 754 So.2d 486, 488(¶ 7) (Miss.Ct.App.1999). The plea colloquy evinces that Leavitt was fully advised of the rights he was waiving by entering a guilty plea, to include his right to a speedy trial. Without a finding that his plea was not voluntarily, knowingly, and intelligently entered, or that a factual *992 basis for his plea was absent at the time it was given, his waiver of his right to a speedy trial stands. This issue is currently without merit.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARSHALL COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.